UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIA JOAN JULIETTE WALKER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-2193**<br>**C/W: 20-3425; 21-47**<br>**REF: 20-3425** |
| **JESSECA F. DUPART, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court are two motions to dismiss plaintiff Kirk Bovie's ("Bovie") complaint,[1] filed by defendants Jesseca F. Dupart ("Dupart")[2] and Kaleidoscope Hair Products, L.L.C. ("Kaleidoscope") (collectively, the "defendants").[3] The defendants each argue that Bovie's complaint must be dismissed because (1) his claims have prescribed and (2) he abandoned the decedent: his daughter, Andie Alexandra Bovie ("Andie"). Bovie opposed the motions,[4] to which both defendants replied.[5]

Because the motions (and Bovie's opposition memoranda) referred to matters beyond Bovie's complaint, the Court provided notice to the parties that it may convert the motions to dismiss into motions for summary judgment pursuant to Federal Rule

---

[1] Case No. 20-3425, R. Doc. No. 1. Unless otherwise noted, all record citations herein refer to the master case's docket, Case No. 20-2193.
[2] R. Doc. No. 73.
[3] R. Doc. No. 82. Auto-Owners Insurance Company ("Auto-Owners") also submitted a motion to dismiss, but that motion became moot when the Court dismissed Auto-Owners from the Bovie lawsuit. *See* R. Doc. No. 146.
[4] R. Doc. Nos. 91–93. Although Bovie submitted three separate opposition memoranda to respond to Dupart's, Kaleidoscope's, and Auto-Owners' separate motions, the opposition memoranda are identical. Accordingly, the Court refers only to R. Doc. No. 91 herein.
[5] R. Doc. No. 103; R. Doc. No. 102.

of Civil Procedure 12(d), and it invited the parties to submit supplemental material or argument pertinent to the motions.[6] The defendants both filed supplemental memoranda,[7] but Bovie did not.

The Court now converts both motions into motions for summary judgment. So converted, it denies them because Bovie's claims have not prescribed and there remain genuine issues of material fact as to whether Bovie abandoned Andie for purposes of his survival and wrongful death claims.

# I.

This case arose out of the tragic death of Andie, the four-year-old child of Bovie and Kia Joan Juliette Walker ("Walker"), on September 5, 2019.[8] On August 5, 2020, Walker, individually and in her capacity as the representative of the Succession of Andie, sued the defendants for wrongful death and survival damages resulting from Andie's death.[9] On December 18, 2020, Bovie, "individually and through the Succession of Andie," filed a similar claim for wrongful death and survival damages against the defendants, alleging negligence and vicarious liability.[10]

In a proceeding in the 24th Judicial District Court in Jefferson Parish, Walker filed a petition to be appointed as Independent Administrator of Andie's succession.[11] On December 17, 2020, Bovie filed a Motion to Substitute himself as Succession

---

[6] R. Doc. No. 141.
[7] R. Doc. No. 143; R. Doc. No. 144.
[8] Case No. 20-3425, R. Doc. No. 1, at 5 ¶ 12.
[9] R. Doc. No. 1.
[10] Case No. 20-3425, R. Doc. No. 1, at 1 (introductory text).
[11] R. Doc. No. 73-2.

Representative in place of Walker.[12] At a hearing held in connection with Bovie's motion, Bovie gave sworn testimony that the last time he saw Andie was in 2017.[13] Bovie could not visit Andie because, in 2017, he was incarcerated in Colorado for "two or three weeks,"[14] and after his incarceration, he was placed in a work-release program that allegedly prevented him from visiting Andie in Louisiana.[15]

The defendants first argue that Bovie's claims have prescribed under Louisiana law.[16] Both Civil Code articles under which Bovie brings claims have a prescriptive period of one year. *See* La. Civ. Code arts. 2315.1 & 2315.2. Since Bovie brought his claims more than a year after Andie's death, they argue, Bovie's claims have prescribed.[17] Bovie responds that, since he shares a cause of action with Walker, her filing of claims against the defendants interrupted his prescriptive period.[18] In reply, the defendants argue that Bovie's claims have prescribed because the defendants did not have notice of Bovie's potential suit within the one-year prescriptive period.[19]

Next, the defendants argue that Bovie is not entitled to recovery in either a wrongful death or survival action because he abandoned Andie.[20] Bovie opposes by

---

[12] R. Doc. No. 73-4.
[13] R. Doc. No. 144-1, 9–10.
[14] *Id.* at 10.
[15] R. Doc. No. 91-1, at 2.
[16] R. Doc. No. 82, at 5; R. Doc. No. 73, at 6–8.
[17] R. Doc. No. 82, at 5; R. Doc. No. 73, at 6–8.
[18] R. Doc. No. 91, at 2–7.
[19] R. Doc. No. 102, at 4–5; R. Doc. No. 103, at 3–4.
[20] R. Doc. No. 82, at 6–7; R. Doc. No. 73, at 4–6.

offering an affidavit[21] in which Bovie claimed that his "financial support of Andie continued until her death"[22] and that his "phone calls and efforts to use other forms of communication to Andie continued [until her death]."[23] He concludes by stating that he "never abandoned [Andie]."[24]

## II.

Under Federal Rule of Civil Procedure 12(d), "[w]hen a party bases a motion to dismiss on matters outside the pleadings, the court has discretion either to accept the extraneous material and convert the motion to dismiss into a motion for summary judgment, or to decide the motion, as defendant styled it, under the principles of Rule 12(b)(6)." *Rubio v. Hyatt Corp.*, No. 17-7833, 2017 WL 5177943, at *2 (E.D. La. Nov. 8, 2017) (Barbier, J.) (quoting *McDonald v. Kansas City S. Ry. Co.*, No. 16-15975, 2017 WL 1709353, at *2 (E.D. La. May 3, 2017) (Vance, J.)); *see also* 5C Wright & Miller, *Fed. Prac. & Proc.* § 1366 (3d ed.) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider.").

Both Kaleidoscope and Dupart ventured beyond Bovie's complaint by attaching to their motions to dismiss Walker's petition for appointment of independent administrator, and her supporting affidavit, both of which were filed in the state-

---

[21] R. Doc. No. 91-1.
[22] *Id.* at 2.
[23] *Id.*
[24] *Id.*

4

court proceedings related to Andie's succession.[25] And even Bovie attached to his opposition memorandum his own affidavit.[26]

As previously noted, because the parties referred to materials outside of Bovie's complaint, the Court, pursuant to Federal Rule of Civil Procedure 12(d), provided notice to the parties that it may convert the motions to dismiss into motions for summary judgment, and it allowed each party to file supplemental materials into the record.[27] The defendants offered another affidavit from Walker, which stated that Bovie has sent only $360 for Andie since leaving Louisiana in 2017 ("[t]hree hundred dollars for Christmas of 2018 and one sixty-dollar payment for childcare") and that "Bovie has not contributed in any way to [Andie's] care and support and has avoided his parental responsibilities since 2017."[28] The affidavit also stated that Walker "formally went thru [sic] the process in May of 2019, to put Mr. Bovie on child support and was informed that he could not be located,"[29] and that "Bovie did not contribute in any way to the funeral expenses" for Andie.[30] The defendants also attached the transcript from the state-court hearing in which Bovie sought to be substituted for Walker as the succession representative; there, Bovie testified that, for "a year and a half[,] I couldn't leave Colorado."[31] Bovie did not submit any additional materials.

---

[25] R. Doc. Nos. 73-2, 73-3, 82-4, & 82-5.
[26] R. Doc. Nos. 91-1 & 92-1.
[27] R. Doc. No. 141.
[28] R. Doc. No. 143-2, at 1; R. Doc. No. 144-2, at 1.
[29] *Id.*
[30] *Id.*
[31] R. Doc. No. 143-1, at 3–4; R. Doc. No. 144-1, at 2–5.

The Court now officially converts the motions into motions for summary judgment and denies them both.

### III.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*

6

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## IV.

### A. Prescription

The defendants first argue that, because Bovie filed his wrongful death and survival action more than a year after Andie's death, those claims have prescribed. They are wrong. Making what is strictly an *Erie* guess, this Court concludes that the mother and father of a deceased child "share" the same wrongful death and survival action. Accordingly, as explained below, the timely filing of a wrongful death or survival claim by one parent interrupts prescription as to the other parent.

7

Louisiana provides a one-year prescriptive period for wrongful death and survival actions. *See* La. Civ. Code arts. 2315.1(A) & 1215.2(B). Generally, "[p]rescription runs against all persons unless [an] exception is established by legislation." *Id.* art. 3467. But "[w]hen several parties share a single cause of action, suit by one interrupts prescription as to all." *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383, 1390 (La. 1993) (quoting *Louviere v. Shell Oil Co.,* 440 So. 2d 93, 96 (La. 1983)) (alterations omitted); *see also id.* (citing La. Civ. Code art. 3462 ("Prescription is interrupted when the . . . obligee commences action against the obligor, in a court of competent jurisdiction and venue.")).

"The surviving father and mother of the deceased, or either of them if [the deceased] left no spouse or child surviving," may bring a survival or wrongful death action for their child's death. La. Civ. Code arts. 2315.1(A)(2) & 2315.2(A)(2). The Louisiana Supreme Court has squarely held that a decedent's "children and his widow share the same wrongful death cause of action" against the defendant. *Williams*, 611 So. 2d at 1390. Because they share the same cause of action, a widow's timely filing of that claim interrupts prescription as to the children's wrongful death claims. *Id.* Similarly, a daughter shares a survival claim "with her sister and mother; therefore, prescription of that cause of action [i]s interrupted when [the daughter's] sister and mother timely file[] suit against the defendants." *Warren v. Louisiana Med. Mut. Ins. Co.*, 21 So. 3d 186, 188 (La. 2008) (citing *Williams*, 611 So. 2d at 1390), *vacated on reh'g on other grounds* (June 26, 2009).

Those cases come very close to, but stop just short of, deciding the issue here: whether the *mother and father* of a deceased child share the same survival and wrongful death actions. And this Court, sitting in diversity, must faithfully apply the law of Louisiana. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To do that, the Court "first look[s] to final decisions of the Louisiana Supreme Court." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 692 (5th Cir. 2020). But where "there are none on th[e] topic, [the Court] 'must make an *Erie* guess and determine, in [its] best judgment, how [the Louisiana Supreme Court] would resolve the issue if presented with the same case.'" *Id.* (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)) (final alteration in original). In doing so, the Court "must employ Louisiana's civilian methodology, whereby [it] first examine[s] primary sources of law: the constitution, codes, and statutes." *In re Katrina*, 495 F.3d at 206.

However, under Louisiana law, "[j]urisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999)) (emphasis in original). "Unlike stare decisis, which can flow from one decision, in the civil system numerous court decisions must agree on a legal issue to establish *jurisprudence constante*. . . . And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; '[federal courts] are not strictly bound' by the decisions of Louisiana's intermediate courts." *Jorge-Chavelas v. Louisiana Farm*

9

*Bureau Cas. Ins. Co.*, 917 F.3d 847, 851 (5th Cir. 2019) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 261 (5th Cir. 2003)).

Although no Louisiana Supreme Court case has squarely held that a mother and father of a deceased child share the same survival and wrongful death cause of action, this Court concludes that it would likely so hold. First, and in accordance with Louisiana's civilian methodology, it makes sense textually. Like "[t]he surviving spouse and child or children of the deceased," La. Civ. Code arts. 2315.1(A)(1) & 2315.2(A)(1)—two types of survival and wrongful death claimants that are grouped within a single class of potential claimants—"[t]he surviving father and mother of the deceased" are also grouped among the same class of claimants. *Id.* arts. 2315.1(A)(2) & 2315.2(A)(2). It would make no sense, textually or logically, to hold that (1) the decedent's spouse and children share a claim, but (2) the decedent's mother and father do not. Textually, there is no difference between the two classes.

Second, as noted above, the most relevant jurisprudence reinforces that reading. *Williams* held that a decedent's spouse and children share the same wrongful death cause of action. *Williams*, 611 So. 2d at 1390. *Warren* concluded the same as to the survival action. *Warren*, 21 So. 3d at 188–89.[32] The fairest inference

---

[32] In *Warren*, the court ultimately vacated its entire original opinion upon rehearing, finding that all claims were prescribed under the Medical Malpractice Act, which provides different prescriptive rules than those applied by the court in its original opinion. *Warren*, 21 So. 3d at 203. However, the court did not go so far as to repudiate the soundness of its original reasoning—or the reasoning of *Williams*—noting instead that *Williams* was not the right test to apply in medical malpractice cases: "*Williams* has no application in the medical malpractice area . . . we erred in relying on *Williams* on original hearing." *Id.* at 207. Because the present case does not involve medical malpractice, this recanting has little effect here.

10

from *Williams* and *Warren* is that the mother and father of the decedent—who, again, are grouped among a single class of statutory claimants, just like spouses and children—would also share those causes of action.

The defendants' arguments to the contrary are unpersuasive. First, Dupart, vaguely citing *Warren* and a non-binding Louisiana Court of Appeal case, argues that "[w]hile a survival action can be shared, a wrongful death action is unique to the beneficiary."[33] Dupart apparently contends that a wrongful death action, because it is "unique to the beneficiary," cannot be shared among claimants. But that contention, as explained above, is squarely contradicted by *Williams*—which held that a decedent's spouse and child *do* share a wrongful death claim. *Williams*, 611 So. 2d at 1390. And, as noted, *Warren* did not repudiate *Williams*—and it is not clear

---

Another point about *Warren*'s original opinion: the court held that the widow and children shared the same survival cause of action; therefore, under *Williams*, the timely lawsuit by one of those claimants interrupted prescription as to the others. *Id.* at 188–89. As for the wrongful death claims, however, the court concluded in its original opinion that those claims had not prescribed on different grounds—that the amended complaint (and its untimely wrongful death claim) *related back* to the timely filed complaint under La. Civ. Code art. 1153 and *Giroir v. S. La. Med. Center, Div. of Hosp.*, 475 So. 2d 1040 (La. 1985). *Id.* at 189.

The divergent reasoning between the survival and wrongful death claims appears to be a product of the case's procedural posture, not substance: the court noted that the Court of Appeal "resolved the case based on *Giroir* and did not reach the question of whether the trial court erred in" concluding that a co-claimant's timely filing interrupts prescription as to other co-claimants; because the Louisiana Supreme Court agreed that the Court of Appeal's approach was not in error, it did not reach the alternative question—the "shared claim" rule that governs the present case. *Id.* at 190 n.2. Therefore, for purposes of the present *Erie* guess, the Court assumes that the Louisiana Supreme Court treats the two claims identically.

[33] R. Doc. No. 73-1, at 7 (citing *Warren*, 21 So. 3d at 194; *Calbert v. Batiste*, 109 So. 3d 505, 507–08 (La. Ct. App. 3d Cir. 2013)).

11

from the opinion that the individualized nature of the wrongful death claim motivated the court's differential reasoning, as noted above.[34]

At any rate, it is true that wrongful death claims are unique to each plaintiff—*i.e.*, a wrongful death claim may result in a different *damage* award for each plaintiff because it turns on each plaintiff's individualized harm, while a survival action looks only to the harm suffered by the decedent. *Joseph v. Huntington Ingalls Inc.*, No. 18-2061, __ So. 3d __, 2020 WL 499939, at *6–7 (La. Jan. 29, 2020). But that does not mean that wrongful-death plaintiffs cannot ever share the same cause of action—something that many courts have recognized. *See Williams*, 611 So. 2d at 1390; *Phillips v. Francis*, 817 So. 2d 107, 110 (La. Ct. App. 3d Cir. 2002) (finding that spouse and daughter of decedent share a wrongful death cause of action, even if a different damages award is given to each, because "the term 'cause of action' focuses on the conduct of the particular defendant in the occurrence or transaction which gives rise to the plaintiff's demand" (quoting *Benoit v. Allstate Ins. Co.*, 773 So. 2d 702, 706 (La. 2000))); *Lindsay v. Ports Am. Gulfport, Inc.*, 286 So. 3d 534, 540 (La. Ct. App. 4th Cir. 2019) (finding that, if the plaintiffs' half-siblings could establish their relationship to the decedent, they would share the same wrongful death cause of action with the plaintiffs); *Sam v. Sorrel Elec. Contractors, Inc.*, 525 So. 2d 244, 246–47 (La. Ct. App. 1st Cir. 1988) (finding prescription interrupted on wrongful death claim because it was shared by two co-claimants, one of whom was timely).

---

[34] Rather, the Louisiana Supreme Court analyzed the wrongful death claim under the relation-back doctrine because the Court of Appeal did so. *See supra* note 32.

Second, Dupart and Kaleidoscope attempt to establish a notice requirement, citing that same, nonbinding Louisiana Court of Appeal case to argue that "notice to the defendant within the prescriptive period is an essential element when an untimely plaintiff seeks to defeat prescription based on another plaintiff's timely filed suit."[35] But neither *Williams* nor *Warren*—both Louisiana Supreme Court cases—required such notice when the plaintiffs shared the same cause of action. *Warren* discussed notice only when applying the four-factor relation-back test for amended pleadings, *Warren*, 21 So. 3d at 193–94, but not when applying the rule that matters here: the "shared claim" rule from *Williams*. *Id.* at 188–89. Because *Warren* did not impose the notice requirement that the defendants urge, this Court will not do so. For purposes of the present *Erie* guess, this Court is "'not strictly bound' by the decisions of Louisiana's intermediate courts" that the defendants cite. *Jorge-Chavelas*, 917 F.3d at 851 (quoting *Am. Int'l Specialty Lines*, 352 F.3d at 261).

Accordingly, this Court concludes that the Louisiana Supreme Court would hold that a mother and father of a deceased child share survival and wrongful death causes of action, and that the timely filing of one interrupts prescription as to the other. Therefore, the timely filing by the mother would interrupt prescription as to the father, and "that interruption continues during the pendency of the suit." *Louviere*, 440 So. 2d at 96 (citing La. Civ. Code art. 3463).

---

[35] R. Doc. No. 73-1, at 7 (citing *Calbert*, 109 So. 3d at 508); R. Doc. No. 102-1, at 4–5.

Walker filed her wrongful death and survival claims against the defendants timely, within one year of Andie's death.[36] That timely filing interrupts the prescription for her co-claimant, Bovie. And that interruption continues at least during the pendency of the lawsuit, *id.*; because the lawsuit was still pending when Bovie filed his complaint on December 18, 2020,[37] his wrongful death and survival claims are not prescribed. Therefore, the Court rejects the defendants' arguments as to prescription.

### B. Abandonment

The defendants next argue that Bovie may not bring a survival or wrongful death claim in the first place. They argue that he "abandoned" Andie for purposes of these claims. The Court concludes that there remain genuine issues of material fact as to whether Bovie abandoned Andie as a matter of law.

As discussed above, Louisiana Civil Code articles 2315.1 & 2315.2 provide survival and wrongful death actions to "[t]he surviving father and mother of the deceased, or either of them if [the deceased] left no spouse or child surviving." La. Civ. Code arts. 2315.1(A)(2) & 2315.2(A)(2). However, both articles also contain an abandonment provision: "a father or mother who has abandoned the deceased during [her] minority is deemed not to have survived [her]." *Id.* arts. 2315.1(E) & 2315.2(E).

The Civil Code further defines the term "[a]bandoned" as: "[i]n the context of a father or mother abandoning his child, abandonment is presumed when the father or

---

[36] *See* R. Doc. No. 1 (filed August 5, 2020). Andie died on September 5, 2019. *Id.* at 4 ¶ 11, 6 ¶ 16.
[37] Case No. 3425, R. Doc. No. 1.

14

mother has left his child for a period of at least twelve months and the father or mother has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility." La. Civ. Code art. 3506. Accordingly, Bovie is considered to have abandoned Andie if, without just cause, Bovie (1) left Andie for at least twelve months and (2) failed to provide for Andie's care and support. *Dixon v. Garner*, No. 17-564, 2019 WL 1370855, at *12 (M.D. La. Mar. 25, 2019) (U.S. Magistrate Judge's ruling by consent of the parties).

The defendants assert that Bovie abandoned Andie during her minority, so he cannot bring either a wrongful death or survival action.[38] They rely primarily on *Myles ex rel. Myles v. Howell*, which found that a biological father was not entitled to bring a wrongful death or survival action for his child's death where the father "was in prison for the entirety of" his child's life. *Myles ex rel. Myles v. Howell*, 277 So. 3d 1218, 1221 (La. Ct. App. 2d Cir. 2019), *writ denied sub nom. Myles v. Howell*, 280 So. 3d 603 (La. 2019). The father was never married to the child's mother, and she never brought the child to see the father in prison. *Id.* The father testified that he "spoke with his son over the phone about once a week," and that "he was able to maintain contact with his son by exchanging letters" with the mother. *Id.*[39] Ruling against the

---

[38] R. Doc. No. 82, at 6; R. Doc. No. 143, at 3.
[39] But the court appeared to discount this testimony, observing that "no letters were introduced at the hearing on the exception," despite the father's testimony that he "kept all of the letters from" the mother. *Myles*, 277 So. 3d at 1221.

15

father, the court concluded that "[i]mprisonment is not an excuse to escape parental obligations." *Id.* at 1223.[40]

The defendants attached to their supplemental memoranda a transcript of the proceeding in which Bovie attempted to substitute himself as the succession representative, as well as an affidavit of Walker.[41] They argue that Bovie's absence from Andie's life between mid-2017 and her death in 2019 shows that he abandoned her under La. Civ. Code art. 3506, and they argue that the $360 ($300 "for Christmas of 2018 and one sixty-dollar payment for childcare") that Bovie provided for Andie during that period shows that he failed to provide for her care and support.[42] They emphasize that, although Bovie attended Andie's funeral, he "did not contribute in any way to her funeral expenses."[43] Walker also averred that Bovie was not present for Andie's second, third, or fourth birthdays, and that Walker "formally went thru

---

[40] Other cases have found that plaintiff-parents who had minimal contact with their child have abandoned the child for purposes of a wrongful death or survival action. *See Barnes v. Bott*, 615 So. 2d 1337, 1342 (La. Ct. App. 4th Cir. 1993) (finding that the father abandoned his son where the father: left the child two years prior to his death to "work elsewhere," "did not make any significant financial contribution to the support of his son," visited the mother's home only once or twice over a period of three years, during which he "spent no time with his son," "never sent presents . . . or talked to him by telephone"); *Am. S. Home Ins. Co. v. Guidry*, 631 So. 2d 733,734–35 (La. Ct. App. 4th Cir. 1994) ("[A] parent who is nothing more than the biological parent of a wrongly killed child, without being a partner in the parent-child relationship, is not entitled to a monetary award for the death of the child."); *Mitt v. Sec. Ins. Co.*, 361 So. 2d 465, 468 (La. Ct. App. 4th Cir. 1978) (affirming jury verdict that biological mother had abandoned child where she saw her son only "off and on," and "there [wa]s no other evidence than her testimony to support a conclusion that the mother had any social relationship whatsoever with her son").
[41] R. Doc. No. 143, at 4; R. Doc. No. 144, at 3–5.
[42] R. Doc. No. 143, at 4; R. Doc. No. 144, at 3–5.
[43] R. Doc. No. 144-2, at 1.

[sic] the process in May of 2019, to put Mr. Bovie on child support[,] and was informed that he could not be located."[44]

In opposition to the motions to dismiss, Bovie offered an affidavit in which he stated, *inter alia*:

> From Andie's birth until her death on September 5, 2019, I had always been a part of my daughter's life providing physical care support, emotional support, and financial support. In 2015, 2016, and through the first half of 2017, I resided in Jefferson Parish and provided direct care and support for my daughter. . . .
>
> In September 2017, while visiting my other daughter in Colorado, I got in trouble with the law and was placed in a work-release program. As part of the program, I had to wear an ankle bracelet and was subject to travel restrictions, which prohibited my return to Louisiana. I had no prior criminal record which is why I was admitted into the diversionary program. My financial support of Andie continued until her death on September 5, 2019. However, my work release program restricted my available financial support payments. Kai Walker became agitated with the reduced support payments and tried to punish me by making my communications, with Andie, very difficult, [sic] I would pay support by traceable electronic means. My phone calls and efforts to use other forms of communications to Andie continued. . . . When my daughter died, Kia [sic] Walker made no attempts to contact me to notify me of my daughter's death. . . . My mother notified me of my daughter's death and funeral arrangements. I sought permission to leave Colorado to attend my daughter's services and I did attend her services. I have never abandoned my daughter.[45]

As previously noted, after he was given notice that the Court may convert the motions to motions for summary judgment, Bovie did not submit any additional materials to support his position.[46]

---

[44] *Id.*
[45] R. Doc. No. 91-1, at 1–2.
[46] R. Doc. No. 141.

17

The Court agrees that (1) being physically absent from Andie's life for nearly two years, and (2) providing only $360 in financial support for Andie during that time, may suggest that Bovie is a poor father. However, that cannot be enough, standing alone, to constitute abandonment as a matter of law. For the Court to so conclude, it would need to find that payments totaling only $360 over a year and a half is, in all cases, categorically sufficient to "demonstrate[e] an intention to permanently avoid parental responsibility," La. Civ. Code art. 3506; the defendants have not cited, and the Court has not found, any cases so holding.

It would be one thing if the Court had undisputed evidence of Bovie's total disposable income and the financial restrictions imposed as part of his work release program—if only a miniscule share of that disposable income went to support Andie, then *maybe* that could be enough to conclude that Bovie intended to abandon her. It may also be an easier question if the Court had before it undisputed evidence of the amount of financial support that Andie required. And, while Bovie's affidavit is not exactly a model of specificity, he does describe "support payment*s*"—*i.e.*, more than one support payment[47]—which seems to contradict Walker's description of "one sixty-dollar payment for childcare."[48] Further, although the Court takes the point from *Myles* (that imprisonment is no excuse to escape parental obligations), that case was not faced with the murkier facts here: where the father alleges that the mother

---

[47] R. Doc. No. 91-1, at 1–2 ("Kai Walker became agitated with *the reduced support payments* and tried to punish me by making my communications, with Andie, very difficult[.]" (emphasis added)).
[48] R. Doc. No. 144-2, at 1.

18

prevented him from contacting the child.⁴⁹ At bottom, there remain genuine issues of material fact as to whether Bovie intended to abandon Andie.

V.

The Court concludes that Bovie's claims are not prescribed and that there remain genuine issues of material fact as to whether Bovie intended to abandon Andie for purposes of his wrongful death and survival claims. The Court will therefore deny the motions for summary judgment without prejudice to their being timely re-urged, if the defendants so choose. Therefore,

**IT IS ORDERED** that Dupart's and Kaleidoscope's motions⁵⁰ to dismiss are hereby **CONVERTED** into motions for summary judgment.

**IT IS FURTHER ORDERED** that Dupart's and Kaleidoscope's motions for summary judgment are **DENIED WITHOUT PREJUDICE** to their being timely re-urged at a later date.

New Orleans, Louisiana, July 7, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

⁴⁹ R. Doc. No. 144-1, at 11 (transcript of succession representative substitution proceeding) (Question: "Although you were in Colorado, you were still trying to talk to [Andie] and see her?" Bovie's response: "Correct, all during that time." Question: "And that was denied by Ms. Walker, wasn't it?" Bovie's response: "Correct.").
⁵⁰ R. Doc. Nos. 73 & 82.