## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KIA JOAN JULIETTE WALKER, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                          **No. 20-2193**
                                                         **C/W: 20-3425**
                                                         **REF: 20-3425**

**JESSECA F. DUPART, ET AL.**                              **SECTION I**

## ORDER & REASONS

Before the Court are motions for summary judgment, filed by defendants, Kaleidoscope Hair Products, L.L.C. ("Kaleidoscope"),[1] and Jesseca F. Dupart ("Dupart"),[2] with respect to the claims of plaintiff, Kirk A. Bovie, Jr. ("Bovie"). Bovie opposes the motions.[3] For the following reasons, the Court denies Kaleidoscope's motion for summary judgment, but the Court grants Dupart's motion for summary judgment with respect to Bovie's claims against Dupart in her individual capacity.

---

[1] R. Doc. No. 210 (motion); R. Doc. No. 238 (reply memorandum).

[2] R. Doc. No. 218. Dupart filed a motion in her individual capacity requesting summary judgment with respect to Bovie's claims. *Id*. Dupart also filed a motion to adopt the motion for summary judgment filed by Kaleidoscope. *See* R. Doc. No. 214. As ordered below, the Court grants Dupart's motion to adopt Kaleidoscope's motion for summary judgment.

[3] R. Doc. No. 239. Bovie filed a motion to adopt the opposition memorandum filed by plaintiff, Kai Joan Juliette Walker. *Id*. As ordered below, the Court grants Bovie's motion to adopt Walker's opposition. Unless otherwise indicated in this order, any discussion of "Bovie's" argument refers to Walker's opposition memorandum. *See* R. Doc. No. 223. Walker is no longer a party as she has settled her claims. *See* R. Doc. No. 247.

# I.     BACKGROUND

This case arose out of the tragic death of Andie Alexandra Bovie ("Andie"), the four-year-old child of Bovie and Kia Joan Juliette Walker ("Walker"), on September 5, 2019.[4]   On August 5, 2020, Walker, individually and in her capacity as the representative of the Succession of Andie, sued the defendants for wrongful death and survival damages resulting from Andie's death.[5]   On December 18, 2020, Bovie, "individually and through the Succession of Andie," filed a similar claim for wrongful death and survival damages against the defendants, alleging negligence and vicarious liability.[6]

Jesseca F. Dupart ("Dupart") is an entrepreneur and the sole owner of Kaleidoscope Hair Products, L.L.C. ("Kaleidoscope" or "Kaleidoscope Hair Products"), which makes and sells hair products.[7]   Dupart is also the owner of several other entities, including Kaleidoscope Realty, L.L.C. ("Kaleidoscope Realty") and Kaleidoscope Management, Inc. (Kaleidoscope Management").[8]

In January 2018, Dupart first met Shaynah Solochek ("Solochek") while Dupart was on tour teaching social media marketing.[9]   In the summer of 2018, Dupart offered Solochek a job with Kaleidoscope[10] and asked her to move to New

---

[4] R. Doc. No. 209-1, at 3; R. Doc. No. 228-1, at 3.
[5] R. Doc. No. 1.
[6] Case No. 20-3425, R. Doc. No. 1, at 1 (introductory text).
[7] R. Doc. No. 223-4, at 14, 242–243.
[8] *Id*. at 241–244.  Dupart is the sole member of Kaleidoscope Realty, and she owns all shares of stock in Kaleidoscope Management.  *Id*. at 243.
[9] *Id*. at 37, 160–161.
[10] Unless otherwise indicated in this order, any mention of "Kaleidoscope" refers to defendant, Kaleidoscope Hair Products, L.L.C.

Orleans.[11]  Dupart described Solochek as her assistant, but Solochek did not have a specific job title.[12]  Solochek was "not limited to getting cups of coffee."[13]  Solochek provided event coordination services like arranging flights and hotel accommodations.[14]  Solochek also helped manage Kaleidoscope operations such as paying bills[15] and handling invoices.[16]  Solochek even provided her opinion with respect to the company's marketing.[17]  Overall, according to Dupart, Solochek would perform a range of various duties "[w]herever she needed to."[18]

On September 5, 2019, Walker arrived at Dupart's Lakeview house in New Orleans.[19]  Walker was a makeup artist who regularly applied Dupart's makeup for special events, like filming a video for Kaleidoscope or when Dupart published content on her Instagram social media page.[20]  Solochek had previously contacted

---

[11] *Id*. at 48.  When Solochek first moved to New Orleans, she was employed by Kaleidoscope Hair Products.  *Id*.  In September 2019, Solochek was employed by Kaleidoscope Management.  *Id*. at 110 (noting that Solochek is an "employee" of Kaleidoscope Management).

[12] *Id*. at 47.

[13] *Id*. at 27.

[14] *Id*. at 28.

[15] *Id*. at 40.

[16] *Id*. at 138.

[17] *Id*. at 139.

[18] *Id*. at 158.

[19] *Id*. at 28.  The Lakeview house was leased by Kaleidoscope Realty for Dupart's use *Id*. at 22.  Solochek signed for the renter's insurance policy for the Lakeview house. *Id*. at 235.

[20] *Id*. at 28, 35.  On September 5, 2019, Dupart planned to attend a party for Delvin Dickerson ("Dickerson"), a photographer that Kaleidoscope paid and with whom Dupart developed a personal friendship.  *Id*. at 67–68.  Lauren, a recently-hired Kaleidoscope employee, delivered a cake to the Lakeview house for Dupart to take to Dickerson's party.  *Id*. at 66.  Dupart did not identify Lauren's last name during her deposition.  *Id*.

Walker to schedule Dupart's makeup session, and Solochek answered the door when Walker arrived.[21]   The Lakeview home included a backyard with a swimming pool that did not have a security fence or covering.[22]   Walker brought Andie with her on September 5, 2019.[23]   Walker proceeded to a bedroom where Dupart was working with a personal stylist, Michael Mosely ("Mosely").[24]

---

[21] R. Doc. No. 223-2 (Walker declaration), at 3.   In its reply memorandum, Kaleidoscope contends that the Court should not consider Walker's declaration because it is not based on Walker's personal knowledge and because it states Walker's "subjective opinion" regarding the relationship between Dupart and Solochek.   *See* R. Doc. No. 238, at 1–2.

Federal Rule of Civil Procedure 56(c)(4) requires declarations offered in support of, or in opposition to, summary judgment to be based on personal knowledge. Fed. R. Civ. P. 56(c)(4); *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012).   While a declaration need not specifically state that it is based on personal knowledge, it must include enough factual support for a court to determine that its averments were based upon the personal knowledge of the declarant. Fed. R. Civ. P. 56(c)(4); *see also Thomas v. Atmos Energy Corp.*, 223 F. App'x. 369, 374 (5th Cir. 2007). When considering a motion for summary judgment, a court disregards any portion of a declaration that fails to comply with Rule 56(c)(4). *Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

Walker's declaration contains enough factual information for the Court to determine that Walker relied on her personal knowledge to state that Solochek contacted Walker to schedule Dupart's makeup session and that Solochek answered the door to let Walker into the house.   *See* R. Doc. No. 223-2, at 3.

With respect to Kaleidoscope's argument that Walker's declaration states her "subjective opinion" regarding the relationship between Dupart and Solochek, Kaleidoscope cites no rule or caselaw to support its position.   *See* R. Doc. No. 238, at 2.   Although the Federal Rules of Evidence specifically contemplate that a lay witness may offer opinion testimony that is rationally based on the witness' perception, *see* Fed. R. Evid. 701(a), the Court need not resolve this issue.   The Court disregards Walker's characterization of the relationship between Dupart and Solochek as more professional than personal, but other evidence in the record demonstrates that genuine issues of material fact preclude summary judgment in favor of Kaleidoscope.

[22] *Id.* at 99, 123–124.

[23] *Id.* at 77–78.

[24] R. Doc. No. 223-4, at 71–72.   Solochek arranged the flight and accommodations for Mosely to travel to New Orleans and work with Dupart.   Mosely helped Dupart to

Walker began setting up for the makeup session, and Solochek entered the bedroom with Dupart, Walker, and Andie.[25]  Andie asked if she could see the house's swimming pool.[26]  According to Dupart, Dupart answered that she would accompany Andie to the pool once Walker finished applying Dupart's makeup.[27]  According to Walker, Dupart said to Solochek, "Shay, bring Andie by the pool while I get my makeup done."[28]  Neither party disputes that Solochek and Andie departed the bedroom together.[29]

At some point after Andie left with Solochek, Andie returned to the bedroom "very quick[ly]"—"maybe a minute or two"—after leaving with Solochek.[30]  Walker does not recall if Andie said anything when she returned.[31]  Walker maintains that Andie departed a second time shortly after returning.[32]  Walker presumed that Solochek was still monitoring Andie.[33]  Solochek never escorted Andie back to

---

select a series of flattering outfits, and Dupart paid Mosely through one of her companies. *Id*. at 60–61.

[25] *Id*. at 90.

[26] *Id*. at 88.

[27] *Id*. at 89.

[28] R. Doc. No. 223-3, at 43.  Dupart denies that she made such a statement to Solochek.  *See* R. Doc. No. 223-4, at 90–91.  However, on summary judgment, the Court is bound to view the facts in the light most favorable to Bovie, the nonmovant, and to credit Walker's testimony.  *Alliance for Good Gov't v. Coalition for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018) ("[The court] must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor.").  For the purposes of summary judgment, the Court does credit the fact that Dupart asked Solochek to escort Andie to the pool.

[29] R. Doc. No. 223-4, at 90.  R. Doc. No. 223-3, at 44.

[30] R. Doc. No. 223-3, at 45–46.

[31] *Id*.

[32] *Id*. at 47.

[33] *Id*. at 46.

Walker, nor did Solochek inform Walker that Solochek had stopped monitoring Andie.[34]

Roughly ten to fifteen minutes after Andie left the room for a second time, Solochek returned to the bedroom without Andie.[35]  When Solochek returned, Walker questioned Solochek as to Andie's whereabouts, and Solochek stated that she did not know where Andie was.[36]   Walker rushed to the pool, but Andie had already drowned.[37]

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

---

[34] *Id*. at 66.

[35] *Id*. at 47.

[36] *Id*. Bovie—relying on Walker's opposition—argues that the Court should not consider certain "self-exonerating" statements that Solochek allegedly made after the parties discovered that Andie had died because those statements are hearsay.  *See* R. Doc. No. 223, at 19.  However, Bovie does not clearly identify the statements to which he objects, and Bovie does not clearly explain the basis for his argument that the statements are hearsay.  *Id*.  Kaleidoscope does not address this hearsay argument in its reply memorandum.  *See* R. Doc. No. 238, at 1–4.  The Court need not resolve this issue, as none of Solochek's alleged statements after Andie's death impact the Court's analysis because it is undisputed that Solochek left the bedroom with Andie, Solochek later returned to the bedroom without Andie, and Solochek never informed Walker that Solochek had ceased supervising Andie.

[37] R. Doc. No. 223-3, at 47; R. Doc. No. 223-4, at 92.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the

pleadings but must identify specific facts that establish a genuine issue.  *See Anderson*, 477 U.S. at 248.  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255.

## III.    LAW & ANALYSIS

### A.    Whether Solochek owed a duty of care to Andie

As a threshold issue, Kaleidoscope argues that Bovie "cannot demonstrate a breach of any duty owed by Solochek"[38] that could result in a finding that Solochek was negligent.  After reviewing the evidence in the light most favorable to Bovie, the Court concludes that there remain genuine issues of material fact with respect to whether Solochek breached a duty that could result in finding her negligent.

In Louisiana, "every act ... of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A).  To prove a claim of negligence under Louisiana's duty-risk analysis, a plaintiff must prove five elements:

> [F]irst, that the defendant had a duty to conform his conduct to a specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).

---

[38] *Id.*  Kaleidoscope also argues that Bovie has no evidence to support several allegations, including the allegations that there was a standing arrangement for Solochek to supervise Andie and that Solochek left Andie unattended to take a personal cell phone call.  *See* R. Doc. No. 210-2, at 12–16.  Bovie does not offer summary judgment type evidence to support these allegations, and therefore the Court does not consider these allegations.

*Duncan v. Wal-Mart Louisiana, L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017) (citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008)).

"Duty varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved." *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994) (discussing Louisiana law). "When a person undertakes control and supervision of a child, he is not an insurer of the safety of the child. Rather, he is required to use reasonable care commensurate with the reasonably foreseeable risk of harm to which the child might be subjected while under his control and supervision." *Price v. North*, ___ So. 3d ___, 2021 WL 4843882, at *4 (La. App. 1 Cir. Oct. 18, 2021) (citing *Gordon v. Cornerstone Assembly of God Church*, 985 So.2d 762, 765 (La. App. 1st Cir. 2008)); *see also Turner v. Parish of Jefferson*, 721 So. 2d 64, 74 (La. App. 5th Cir. 1998) ("A person (non parent) who has actually undertaken the control and supervision of a child has a duty to use reasonable care to protect the child from injury."); *Doe v. Jeansonne*, 704 So. 2d 1240, 1245 (La. App. 3 Cir. 1997) (same).

Viewed in the light most favorable to Bovie, the evidence demonstrates that Solochek was aware that Andie, a four-year-old child, made a request to visit the pool at the Lakeview house. Solochek then left the room with Andie to accompany her to the pool. Solochek later returned to the bedroom without Andie, and Andie was found in the swimming pool.

When given notice that a very young child wants to visit a swimming pool located on a property, a person exercising reasonable care would not leave that child

unattended and would return the child to her parent or other custodian or, at a minimum, such a person would inform the parent or custodian that the person was no longer supervising the child.  Under these circumstances, such a duty is evident because "[e]xposed pools or bodies of water with no enclosure or barricade present a great risk of drowning to young children because of their natural attraction to such areas." *Simmons v. Whittington*, 444 So. 2d 1357, 1360 (La. App. 2d Cir. 1984); *see also Turner*, 721 So. 2d at 75 ("[T]he coaches had a duty to monitor the children under their supervision with reasonable care under the circumstances, considering the age of the children and their immature judgment, and the conditions of the pool.").

Kaleidoscope stresses that once Andie returned to the room (after Andie initially left with Solochek and before leaving a second time), "any duty with regard to supervision of Andie returns to Walker and can no longer be imputed on Solochek."[39]  Kaleidoscope offers no caselaw demarcating the outer limits of when a custodian's supervision of a child ends.[40]  Indeed, duty "varies depending on the facts, circumstances, and context of each case." *Dupre*, 20 F.3d at 157.

The facts support an argument that a person exercising reasonable care would notify Walker that he or she was no longer supervising four-year-old Andie, that the pool had no fence or other covering, and that Solochek should have returned Andie to another adult's supervision.  Summary judgment is not warranted in favor of Kaleidoscope on the basis that Solochek did not owe a duty of care towards Andie.

### B.    Whether Solochek acted in the course and scope

---

[39] R. Doc. No. 238, at 3.
[40] R. Doc. No. 210-2, at 12–17; R. Doc. No. 238, at 2–3.

**of her employment with Kaleidoscope**

Kaleidoscope also argues that summary judgment is proper because Solochek was not in the course and scope of her employment with Kaleidoscope at the time of Andie's death.[41]   After reviewing the evidence in the light most favorable to Bovie, the Court concludes that there remain genuine issues of material fact with respect to whether Solochek was acting in the course and scope of her employment at the time of Andie's death.

Under Louisiana law, Kaleidoscope may have vicarious liability for actions that Solochek takes within the course and scope of her employment. *See* La. Civ. Code

---

[41] R. Doc. No. 210-2, at 7.  Bovie references Dupart's testimony that, on September 5, 2019, Solochek was not employed by Kaleidoscope Hair Products, L.L.C., but instead by Kaleidoscope Management, Inc.  *See* R. Doc. No. 223-4, at 110, 250.  Kaleidoscope does not argue that the Court should grant summary judgment because Solochek was employed by Kaleidoscope Management rather than Kaleidoscope Hair Products.  *See* R. Doc. No. 210-2, at 7–11.  Bovie argues that the distinction between Kaleidoscope Hair Products and Kaleidoscope Management is "not relevant to the current summary judgment motions."  *See* R. Doc. No. 223, at 22 n.7 (citing to *Adams v. Associates Corp. of N. Am.*, 390 So. 2d 539 (La. App. 3 Cir. 1980)).  *Adams* discusses that in Louisiana, "the courts have disregarded the separate entity concept where it is established that a corporation has been organized and is controlled, and its affairs conducted, so as to make it merely an instrumentality or adjunct of another corporation, and to do otherwise would work serious injustice to the rights of innocent third persons." *Id*. at 542.  Because Kaleidoscope has not raised the distinction between Kaleidoscope Hair Products and Kaleidoscope Management as a basis for summary judgment, the Court does not reach this issue.  The Court questions whether the correct entity has been sued.
   Further, the parties reference evidence tending to show that Solochek worked as an independent contractor for Kaleidoscope Management.  *See*, *e.g.*, R. Doc. No. 223, at 7 n.4; R. Doc. No. 223-4, at 39.  However, Kaleidoscope does not argue that Solochek worked as an independent contractor, nor does Kaleidoscope move for summary judgment on this basis.  *See* R. Doc. No. 210-2; R. Doc. No. 238, at 1–4.  Ultimately, Bovie references a portion of Dupart's deposition testimony in which she states that Solochek was an employee of Kaleidoscope Management, which the Court is bound to credit on summary judgment.  *See* R. Doc. No. 223-4, at 110.

art. 2320 ("Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.").

"In Louisiana, 'generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.'" *White v. United States*, 419 F. App'x 439, 442 (5th Cir. 2011) (quoting *Orgeron v. McDonald*, 639 So. 2d 224, 226–27 (La. 1994)) (alteration omitted). "In other words, the issue is whether 'the tortious conduct of the employee was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business.'" *Id.* (quoting *Baumeister v. Plunkett*, 673 So. 2d 994, 997 (La. 1996)) (alteration omitted).

"Louisiana courts tend to focus on four factors: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Id.* (citing *Manale v. City of New Orleans, Dep't of Police*, 673 F.2d 122, 126 (5th Cir. 1982)). "All four of these factors need not be met in a particular case." *Id.* (citing *Baumeister*, 673 So. 2d at 997). "That the 'predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.'" *Id.* (quoting *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 477 (La. 1990)). "Indeed, 'if the purpose of serving the master's business actuates the servant to any appreciable

extent, the master is subject to liability if the act is otherwise within the service.'" *Id.* (quoting *Ermert*, 559 So. 2d at 477)) (alteration omitted). "The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment." *Baumeister*, 673 So.2d at 997. Whether an action is taken within the course and scope of employment is a mixed question of law and fact. *See Russell v. Noullet*, 721 So. 2d 868, 871 (La. 1999). Having reviewed the evidence submitted, there are conflicting arguments and facts which militate against granting summary judgment with respect to this issue.

### C.    Bovie's claims against Dupart individually

Dupart has also filed a motion[42] for summary judgment with respect to Bovie's claims against her in her individual capacity. Dupart argues that "there are no facts or information that support the proposition that Dupart was vicariously liable for the alleged conduct of [Solochek]."[43] Further, Dupart maintains that "[she] owed no duty to the minor child."[44]

In response, Bovie identifies three legal theories to impose liability on Dupart in her personal capacity, but he provides scant briefing on these issues.[45] Bovie contends that there exist genuine issues of material fact with respect to "whether the Kaleidoscope entities and [Dupart] worked so closely together as to justify piercing the corporate veil or treating these entities as a single business enterprise for liability

---

[42] R. Doc. No. 218.
[43] R. Doc. No. 218-3, at 4. *See id*. at 7.
[44] *Id*. at 8.
[45] R. Doc. No. 223, at 23.

purposes," and "whether [Solochek], when she performed personal tasks for [Dupart], acted as a borrowed servant of [Dupart.]"[46]

With respect to the issue of piercing the corporate veil, Bovie relies on *OBX Res., Inc. v. MBW Expl., L.L.C.*, 32 So. 3d 931 (La. App. 4th Cir. 2010). *OBX* states that limited liability company members "are not personally liable for the debts, obligations, and other liabilities of the LLC to third parties," and "a LLC member is not a proper party in any proceeding against the LLC," pursuant to Louisiana Revised Statute 12:1320(B). *Id.* at 934. However, *OBX* acknowledges that piercing the veil of a limited liability company under the alter ego doctrine can be "justified to prevent the use of the LLC form to defraud creditors." *Id.* at 935.

"The Louisiana Supreme Court has identified five non-exclusive factors to be used in determining whether to apply the alter ego doctrine." *Id.* at 936. These factors are: (1) "commingling of corporate and shareholder funds," (2) "failure to follow statutory formalities for incorporating and transacting corporate affairs," (3) "undercapitalization," (4) "failure to provide separate bank accounts and bookkeeping records," and (5) "failure to hold regular shareholder and director meetings." *Id.* Bovie's argument does not discuss these factors or identify any evidence whatsoever to support any of these factors.[47] Accordingly, this argument is not a basis to withstand summary judgment. *Matsushita Elec. Indus.*, 475 U.S. at 587; *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the

---

[46] *Id.*
[47] R. Doc. No. 223, at 22–23.

district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

With respect to the issue of a single business entity, Bovie relies on *Grayson v. R.B. Ammon & Assocs., Inc.*, 778 So. 2d 1 (La. App. 1st Cir. 2000), and *Berg v. Zummo*, 851 So. 2d 1223 (La. App. 4th Cir. 2003).   Both *Grayson* and *Berg* address the framework for determining "[w]hether an affiliated group of entities constitutes a 'single business enterprise[.]'" *Grayson*, 778 So. 2d at 15; *see also Berg*, 851 So. 2d at 1225.   "If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability." *Grayson*, 778 So. 2d at 14. Louisiana courts consider a non-exhaustive list of eighteen factors, none of which is dispositive, to determine whether a single business entity exists.   *Berg*, 851 So. 2d at 1224–1225.   These factors include whether the entities have "common directors or officers," whether there is "unified administrative control of corporations whose business functions are similar or supplementary," and whether there are "services rendered by the employees of one corporation on behalf of another corporation." *Id*. at 1224.   Again, Bovie's argument does not discuss these factors.[48]   Further, even if the Kaleidoscope entities were indeed a single business entity, neither *Grayson* nor *Berg* address the issue of imposing liability attributable to the single business entity against a corporate stock holder or limited liability company member in her personal capacity. *Grayson*, 778 So. 2d at 13–16; *Berg*, 851 So. 2d at 1224–1226.   Bovie does

---

[48] *Id*.

not address this issue either.[49]  Accordingly, this argument is not a basis to withstand summary judgment.  *Matsushita Elec. Indus.*, 475 U.S. at 587;  *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) ("The nonmovant is also required to articulate the precise manner in which the submitted or identified evidence supports his or her claim.").

With respect to whether Solochek acted as a borrowed servant for Dupart, Bovie relies on *Andrew-Hong v. Gray Ins. Co.*, 945 So. 2d 124, 127 (La. App. 4th Cir. 2006).  *Andrew-Hong* identifies several factors to determine whether an employee is a borrowed servant under Louisiana law, including whether there was an agreement between the original and borrowing employer, who had the right to discharge the employee, and who had the obligation to pay the employee.  *Id*. at 126.  Bovie's argument does not address these factors, nor does he explain how the "borrowed servant" doctrine would be applicable when an employee of a corporation or a limited liability company is employed to perform services for an officer or member of that very same company.[50]  Indeed, the borrowed servant doctrine contemplates the existence of a separate "general employer" and a "borrowed employer."  *Id*. at 126–127.  Bovie has not satisfied his burden on summary judgment of identifying evidence in the record to support his contention that the borrowed servant doctrine could establish individual liability with respect to Dupart.  *Matsushita Elec. Indus.*, 475 U.S. at 587; *Smith v. United States*, 391 F.3d at 625.

---

[49] *Id*.
[50] *Id*.

16

Overall, Bovie fails to meaningly address Dupart's argument that "there are no facts or information that support the propositions that Dupart was vicariously liable for the alleged conduct of [Solochek]."[51]  Further, Bovie entirely fails to address Dupart's argument that "[she] owed no duty to the minor child."[52]  Accordingly, the Court will grant Dupart's motion for summary judgment with respect to Bovie's claims against Dupart individually.

## IV.   CONCLUSION

For all the foregoing reasons,

**IT IS ORDERED** that Bovie's motion[53] to adopt Walker's opposition to both Kaleidoscope's motion for summary judgment and Dupart's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Dupart's motion[54] to adopt Kaleidoscope's motion for summary judgment is also **GRANTED**.

**IT IS FURTHER ORDERED** that Kaleidoscope's motion[55] for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Dupart's motion[56] for summary judgment is **GRANTED**.  All of Bovie's claims against Dupart individually are **DISMISSED WITH PREJUDICE**.

---

[51] R. Doc. No. 218-3, at 4.  *See id.* at 7.
[52] *Id.* at 8.
[53] R. Doc. No. 239.
[54] R. Doc. No. 214.
[55] R. Doc. No. 210.
[56] R. Doc. No. 218.

New Orleans, Louisiana, February 18, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**